BROWN *v.* HOWARD, Assignee, etc.

*(Circuit Court, D. New Hampshire.* ——, 1880.)

1. BANKRUPTCY—IMPLIED TRUST—VENDEE OF CESTUI QUE TRUST—PART-NERSHIP GUARANTY—INDIVIDUAL LIABILITY.—Brown bought a piece of land in Chelsea, Massachusetts, at the request of J. C. Carr, who made the cash payment. Brown gave his notes and a mortgage of the land for the remainder of the purchase money. No writing passed between J. C. Carr and Brown. James M. Carr and his partner, Hill, together with one Cheever and one Dearborn, subsequently entered into an oral agreement with J. C. Carr to take four-fifths of the purchase, and thereafter the interest and taxes were paid in these proportions. The mortgage and notes were, after a time, transferred to a bank, and Hill & Carr, as partners, guarantied their payment. Upon failure of all the parties concerned, the bank proved upon their guaranty against the joint estate of Hill & Carr for the amount of the notes, less the agreed value of the land, and offered proof for the like amount against the separate estate of James M. Carr. The bank subsequently withdrew this claim against the separate estate upon a settlement made with Brown, taking his note for $5,544.26, and giving him an agreement that he should not be called upon to pay the note, but only what he might obtain in dividends from the bankrupt's estate. *Held,* under these circumstances, that Brown could not prove for the amount of the note against the bankrupt's estate.—[ED.

*Assumpsit.*

*H. S. Clark,* for Brown.

*Mr. Frink,* for Howard, appellant.

LOWELL, C. J. This is an action of *assumpsit* to ascertain whether the separate estate of James M. Carr, a bankrupt, is indebted to C. W. Brown in the sum of $5,544.26, or any part of it. It has been submitted to this court without a jury.

The case appears to be a very different one from that which

was presented to the district court, judging by the opinion of that court, which I have seen. These cases are called "appeals," but they are considered like original actions, and all the proof is, or may be, gone into *de novo.*

The plaintiff, Brown, bought a piece of land in Chelsea, Massachusetts, at auction, at the request of Jeremiah C. Carr, who made the cash payment, and the plaintiff gave his notes and a mortgage of the land for the remainder of the purchase money, amounting to something over $5,000. Prices have since fallen so much that the land has been taken by the present holder of the mortgage at an agreed valuation of $1,200. No writing was passed between J. C. Carr and the plaintiff.

Soon after the sale, though whether some few weeks or a month or more it is not certain, four other persons, to-wit, James M. Carr and his partner, Hill, and one Cheever and one Dearborn, orally agreed with J. C. Carr to take four-fifths of the purchase, and thereafter the interest and taxes were paid in these proportions; but whether the bankrupts, Hill & Carr, were to take as partners or not is one of the disputed questions.

After a time the mortgage and notes secured by it were transferred to the First National Bank of Newburyport, the present holders, and Hill & Carr, as partners, guarantied their payment. Still later, Hill & Carr and all the other parties failed, and one of them has died. The bank proved upon their guaranty against the joint estate of Hill & Carr for the amounts of the notes, after deducting the agreed value of the land, and offered proof for a like amount against the separate estate of Carr, but after argument they withdrew this claim and made a settlement with Brown, the plaintiff, taking his note for the amount of $5,544.26, and giving him an agreement that he should not be called upon to pay the note, but only what he might obtain in dividends from this or other bankrupts' estates. Thereupon Brown offered to prove this sum of $5,544.26 against the bankrupt's estate, and the point to be decided is whether he can do so. Brown was a trustee for J. C. Carr, (not the bankrupt,) and might, I suppose,

have maintained a bill in equity against him for repayment. He could have no action at law, because there was no contract binding at law, but only an implied trust.

When J. C. Carr orally agreed to sell four-fifths of the land to this bankrupt and others, if the agreement was binding in equity, without writing, which is very doubtful, under the law of Massachusetts he could in equity require them to bear four-fifths of the loss or of the expense. It by no means follows that Brown could have maintained any suit against them. It appears affirmatively here, though not in the district court, that Brown had no contract or promise of any sort, or any conversation looking towards a promise, with the bankrupt, and there is no evidence that he had with any of the four who were to buy of J. C. Carr. I am at a loss, therefore, to see how an action of *assumpsit* or a bill could have been maintained by him against this bankrupt before his bankruptcy.

The payment which Brown made to the bank by giving them his note, was made long after the bankruptcy, and for the purpose of enabling him to make the proof. It is an indirect mode of drawing a dividend for the bank, when they have withdrawn their own offer of proof. There is no objection to this if there was a liability by the bankrupt to indemnify Brown, which has become absolute and been liquidated since the bankruptcy began. But I cannot discover that liability.

Besides, this debt has once been proved against the joint estate of Hill & Carr, and it can now be proved again against their separate estate only upon evidence that their copartnership guaranty was given as security for their separate liability; but the evidence before me, though not entirely satisfactory, is all one way—that Hill & Carr were to own this land as partners, and not as mere tenants in common. In the unsatisfactory state of the oral evidence, the very fact that they gave their copartnership guaranty is almost decisive of this question.